1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
7                         EASTERN DISTRICT OF CALIFORNIA
8
   ERIC CHARLES RODNEY KNAPP,           CASE NO.   1:12-cv-1895-MJS (PC)
9
                      Plaintiff,        ORDER   DISMISSING   PLAINTIFF'S
10                                       COMPLAINT, WITH LEAVE TO AMEND,
        v.                              FOR FAILURE TO STATE A CLAIM
11
   CALIFORNIA DEPARTMENT OF             (ECF No. 1)
12  CORRECTION, et. al.,
                                        AMENDED   COMPLAINT   DUE   WITHIN
13                   Defendants.        THIRTY DAYS
14  _____/
15
16
17         Plaintiff Eric Charles Rodney Knapp ("Plaintiff") is a state prisoner proceeding pro

18  se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

19         Plaintiff filed this action on November 19, 2012.  (Compl., ECF No. 1.)  No other

20  parties have appeared.  Plaintiff's Complaint is now before the Court for screening.

21  **I.     SCREENING REQUIREMENT**

22         The Court is required to screen complaints brought by prisoners seeking relief

23  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

24  § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has

25  raised claims that are legally "frivolous or malicious," that fail to state a claim upon which

26  relief may be granted, or that seek monetary relief from a defendant who is immune from

27  such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion

28  thereof, that may have been paid, the court shall dismiss the case at any time if the court

                                          -1-

1  determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

2  granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

3      A complaint must contain "a short and plain statement of the claim showing that the

4  pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are

5  not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

6  mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

7  (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).

8  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is

9  plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Facial

10  plausibility demands more than the mere possibility that a defendant committed

11  misconduct and, while factual allegations are accepted as true, legal conclusions are not.

12  Id. at 1949-50.

13  **II.    SUMMARY OF COMPLAINT**

14      Plaintiff is currently housed at Sierra Conservation Center. Plaintiff claims the

15  following Defendants have injured him in some way: 1) Matthew Cate, secretary of the

16  California Department of Corrections and Rehabilitation ("CDCR"), 2) CDCR, 3) the Sierra

17  Conservation Center and State Prison ("SCC") in Jamestown, California, 4) California

18  Correctional Health Care Services ("CHCS"), 5) F. Chavez, CDCR official, 6) M. Alexander,

19  CDCR employee at SCC, 7) B. Alkire, CDCR official, 8) L. Allen, CDCR employee at SCC,

20  9) M. Backlund, CDCR employee at SCC, 10) M. Baldwin, CDCR official at SCC, 11) P.

21  Bolles, CDCR official at SCC, 12) R. Briggs, CDCR official, 13) J. Chander, CDCR

22  employee, 14) T. Clay, CDCR official at SCC, 15) Does 1-50, CDCR

23  officials/employees/agents at SCC, 16) D. Foston, CDCR official at CDCR, 17) D. Gibb,

24  CDCR official at SCC, 18) N. Grannis, CDCR official at CDCR, 19) C. Hammond, CDCR

25  official at CDCR, 20) C. Holmstrom, CDCR official at CDCR, 21) S. Hannah, CDCR official

26  at SCC, 22) C. Koenig, CDCR employee at SCC, 23) J. Lozano CDCR official at CDCR,

27  24) M. Lyons, CDCR employee at SCC, 25) R. Manuel, CDCR official at CDCR, 26) J.

28  Martinez, CDCR official at SCC, 27) S. Mendoza, CDCR employee at SCC, 28) W. Miller,

1  CDCR offical at SCC, 29) R. Otto, CDCR official at SCC, 30) M. Overstreet, CDCR official

2  at SCC, 31) M. Pate, CDCR official at SCC, 32) A. Pendergrass, CDCR official at SCC, 33)

3  E. Pendergrass, CDCR employee at SCC, 34) A. Peters, CDCR employee at SCC, 35) R.

4  Pimental, CDCR official at CDCR, 36) P. Quinn, CDCR official at SCC, 37) P. Rawlinson,

5  CDCR official at SCC, 38) S. Reed, CDCR employee at SCC, 39) K. Robertson, CDCR

6  employee at SCC, 40) W. Sanford, CDCR official at CDCR, 41) M. Scott, CDCR official at

7  CDCR, 42) W. Semsen, CDCR official at SCC, 43) C. Smith, CDCR official at SCC, 44)

8  J. St. Clair, CDCR official at SCC, 45) B. Sullivan, CDCR official at CDCR, 46) J. Tennison,

9  CDCR official at SCC, and 47) J. Walker, CDCR official at CDCR/CHCS.

10      Plaintiff as alleges as follows:

11      From July 31, 2008 to the present, Defendants have retaliated against Plaintiff in

12  response to Plaintiff's activities taken under the First Amendment, the American with

13  Disabilities Act, the Rehabilitation Act, and other federal and state laws.  (Compl. at 3-4.)

14  Plaintiff's First Amendment rights, including the right to receive mail, seek redress, and

15  access the courts, have been violated.  (Id. at 4.)  Plaintiff's right to be free from

16  unreasonable searches and seizures under the Fourth Amendment has been violated.

17  (Id.)  Plaintiff's right to be free from cruel and unusual punishment under the Eighth

18  Amendment has been violated.  (Id.)  Plaintiff's rights under the privileges and immunities

19  clause of the United States Constitution has been violated.  (Id.)  Plaintiff's right to not be

20  deprived of his liberty interests or personal property without due process under the

21  Fourteenth Amendment has been violated.  (Id.)  Plaintiff's right to equal protection of the

22  laws under the Fourteenth Amendment has been violated.  (Id. at 4-5.)  Plaintiff's right to

23  not to be discriminated against on the basis of his physical and mental disabilities under

24  the Americans with Disabilities Act and Rehabilitation Act has been violated.  (Id. at 5.)

25  Plaintiff's right to reasonable and necessary accommodation for his disabilities and

26  handicaps under the American with Disabilities Act and the Rehabilitation Act has been

27  violated.  (Id.)  Plaintiff's right to not be deprived of previously granted accommodations

28  under the Americans with Disabilities Act and the Rehabilitation Act has been violated.

1  (Id.)

2      Plaintiff asks the Court to issue a declaration finding that the Defendants deprived

3  Plaintiff of the rights discussed above, for an injunction preventing Defendants from further

4  subjecting Plaintiff to the same deprivations, compensatory damages, and punitive

5  damages.  (Compl. at 3, 5.)

6  **III.   ANALYSIS**

7      **A.    42 U.S.C. § 1983 CLAIMS**

8      42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights,

9  privileges, or immunities secured by the Constitution and laws' of the United States."

10  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  §

11  1983 is not itself a source of substantive rights, but merely provides a method for

12  vindicating federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94

13  (1989).

14      To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that

15  a right secured by the Constitution or laws of the United States was violated, and (2) that

16  the alleged violation was committed by a person acting under the color of state law.  See

17  West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245

18  (9th Cir. 1987).

19      **B.    Federal Rule of Civil Procedure 18(a)**

20      Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim to relief as an original

21  claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or

22  as alternate claims, as many claims, legal, equitable, or maritime, as the party has against

23  an opposing party."  "Thus multiple claims against a single party are fine, but Claim A

24  against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.

25  Unrelated claims against different defendants belong in different suits, not only to prevent

26  the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure

27  that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the

28  number of frivolous suits or appeals that any prisoner may file without prepayment of the

1    required fees.  28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

2        Plaintiff's Complaint contains a number of unrelated claims in violation of Rule 18.

3    At this time, the Court cannot suggest different groupings of potentially related claims

4    because Plaintiff's allegations are so conclusory in nature and devoid of any facts.

5        The Court will provide Plaintiff with the law applicable to the various types of claims

6    he might be attempting to assert so that he can evaluate which, if any, he feels may be and

7    should be pursued here and which, if any, may be and should be pursued in different

8    actions.

9        Plaintiff must file a separate complaint for each unrelated claim.  If he does not, all

10   unrelated claims will be subject to dismissal.

11       **C.    Doe Defendants**

12       Plaintiff lists as Defendants, Does 1 though 50.  "As a general rule, the use of 'John

13   Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th

14   Cir. 1980).  "It is permissible to use Doe defendant designations in a complaint to refer to

15   defendants whose names are unknown to plaintiff.  Although the use of Doe defendants

16   is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe

17   defendants creates its own problem: those persons cannot be served with process until

18   they are identified by their real names."  Robinett v. Correctional Training Facility, No. C

19   09-3845 SI (pr), 2010 WL 2867696, *4 (N.D. Cal. July 20, 2010).

20       Plaintiff is advised that Does 1 through 50 cannot be served by the United States

21   Marshal until he has identified them as an actual individuals and amended his Complaint

22   to substitute the Defendants' actual names.  The burden remains on Plaintiff to promptly

23   discover the full name of Does 1 through 50; the Court will not undertake to investigate the

24   names and identities of unnamed defendants.  Id.  The Court will grant Plaintiff leave to

25   amend his Complaint and attempt to set forth sufficient identification.

26       **D.    State Agencies**

27       The Eleventh Amendment prohibits suits against state agencies.  See Natural Res.

28   Def. Council v. California Dep't of Transp., 96 F.3d 420, 421 (9th Cir. 1996); Brooks v.

-5-

1  Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991); Taylor v. List,

2  880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was

3  a state agency entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles

4  Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989).  Because CDCR, SCC, and

5  CHCS are state agencies, they are entitled to Eleventh Amendment immunity from suit.

6  Because these Defendants are immune from suit, Plaintiff cannot recover from them.  If

7  Plaintiff chooses to file an amended complaint, he should omit CDCR, SCC, and CHCS

8  as defendants.

9           **E.    Supervisory Liability**

10          The Supreme Court emphasized that the term "supervisory liability," loosely and

11  commonly used by both courts and litigants alike, is a misnomer. Iqbal, 556 U.S. at 678.

12  "Government officials may not be held liable for the unconstitutional conduct of their

13  subordinates under a theory of respondeat superior." Id. at 676.  Rather, each government

14  official, regardless of his or her title, is only liable for his or her own misconduct.

15          When the named defendant holds a supervisory position, the causal link between

16  the defendant and the claimed constitutional violation must be specifically alleged.  See

17  Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441

18  (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff

19  must allege some facts indicating that the defendant either: personally participated in the

20  alleged deprivation of constitutional rights; knew of the violations and failed to act to

21  prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself

22  is a repudiation of constitutional rights' and is 'the moving force of the constitutional

23  violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted);

24  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

25          **F.    Possible Claims**

26                  1.    First Amendment - Retaliation

27          "Within the prison context, a viable claim of First Amendment retaliation entails five

28  basic elements: (1) An assertion that a state actor took some adverse action against an

1   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

2   the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

3   advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th

4   Cir. 2005).

5          The second element of a prisoner retaliation claim focuses on causation and motive.

6   See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his

7   protected conduct was a "'substantial' or 'motivating' factor behind the defendant's

8   conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

9   1989). Although it can be difficult to establish the motive or intent of the defendant, a

10  plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.

11  2003) (finding that a prisoner established a triable issue of fact regarding prison officials'

12  retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines

13  v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th

14  Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory

15  intent").

16         With respect to the third prong, filing a grievance is protected action under the First

17  Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing

18  a civil rights legal action is also protected under the First Amendment. Rizzo v. Dawson,

19  778 F.2d 527, 532 (9th Cir. 1985).

20         With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape

21  liability for a First Amendment violation merely because an unusually determined plaintiff

22  persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d

23  1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts

24  would chill or silence a person of ordinary firmness from future First Amendment activities.

25   Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

26         With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison

27  authorities' retaliatory action did not advance legitimate goals of the correctional institution

28  or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

2.     First Amendment - Mail

Prisoners have a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir.1995) (per curiam). Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages. See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266. Based on security concerns, officials may also prohibit correspondence between inmates. See Turner v. Safley, 482 U.S. 78, 93 (1987). Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court. See Ex Parte Hull, 312 U.S. 546, 549 (1941). Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail." See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

Specific restrictions on prisoner legal mail have been approved by the Supreme Court and Ninth Circuit. For example, prison officials may require that mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). Whether legal mail may be opened outside the inmate's presence, however, is an open question in the Ninth Circuit. At least three other circuits have concluded that legal mail may not be opened outside the inmate's presence. See id. (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976), Back v. Illinois, 504 F.2d 1100 (7th Cir. 1974) (per curiam), and Smith v. Robbins, 452 F.2d 696 (1st Cir. 1972)); see also Samonte v. Maglinti, 2007 WL 1963697 (D. Hawai'i July 3, 2007) (recognizing open question).

The Ninth Circuit has, however, held that an inadvertent opening of an inmate's legal mail constitutes mere negligence and does not rise to the level of a constitutional rights violation cognizable under § 1983. Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989). An isolated incident of mail interference or tampering usually does not support a claim under § 1983 for the violation of a constitutional rights. See Davis v. Goord, 320

-8-

F.3d 346, 351 (2d. Cir. 2003) (isolated incident of mail tampering usually insufficient to state claim); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997) (isolated incident of opening legal mail without evidence of improper motive or resulting interference with access to courts or right to counsel does not support a claim); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (isolated incident of opening one piece of legal mail in error does not rise to level of constitutional violation).

### 3.   First Amendment - Access to Courts

Claims for denial of access to court may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that can not now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–415 (2002). The plaintiff must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Id. at 413–14.

To establish a violation of the right of access to the court, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis v. Casey, 518 U.S. 343, 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348. Plaintiff does not allege sufficient facts to enable the court to determine whether he has suffered such an actual injury and, if so, in what way.

### 4.   Fourth Amendment - Search and Seizure

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" U.S. v. Jacobsen, 466 U.S. 109, 113-114 (1984). Under the Fourth Amendment a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." Id. at 113. The United States Supreme Court has held, however, that "the Fourth Amendment has no applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536. "An inmate has no

1  "reasonable expectation of privacy in his prison cell entitling him to the protection of the

2  Fourth Amendment against unreasonable searches and seizures." Id.  The Court noted,

3  "[p]rison officials must be free to seize from cells any articles which, in their view, disserve

4  legitimate institutional interests." Id. at 528 n. 8.

5          5.      Eighth Amendment - Conditions of Confinement

6          The Eighth Amendment protects prisoners from inhumane methods of punishment

7  and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041,

8  1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison

9  officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

10  personal safety.  See Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986),

11  abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995); Hoptowit

12  v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming

13  from unsafe conditions of confinement, prison officials may be held liable only if they acted

14  with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d

15  1124, 1128 (9th Cir. 1998).

16          The deliberate indifference standard involves an objective and a subjective prong.

17  First, the alleged deprivation must be, in objective terms, "sufficiently serious...." Farmer

18  v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991));

19  Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000).  A deprivation is sufficiently serious

20  when the prison official's act or omission results "in the denial of the minimal civilized

21  measure of life's necessities." Farmer, 511 U .S. at 834 (quoting Rhodes v. Chapman, 452

22  U.S. 337, 347 (1981)).  Second, the plaintiff must make a subjective showing that the

23  prison official knew of and disregarded an excessive risk to an inmate's health or safety.

24  Id. at 837; Johnson, 217 F.3d at 734.  Delays in providing showers and medical attention

25  for inmates suffering from harmful effects of pepper spray may violate the Eighth

26  Amendment.  Clement v. Gomez, 298 F.3d 898, 905-06 (9th Cir. 2002).

27          6.      Fourteenth Amendment - Equal Protection

28          The Equal Protection Clause of the Fourteenth Amendment requires that persons

-10-

1  who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc.,
2  473 U.S. 432, 439 (1985).  An equal protection claim may be established in two ways.  The
3  first method requires a plaintiff to show that the defendant has intentionally discriminated
4  against the plaintiff on the basis of the plaintiff's membership in a protected class.  See,
5  e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  Under this theory of
6  equal protection, the plaintiff must show that the defendant's actions were a result of the
7  plaintiff's membership in a suspect class, such as race, religion, or alienage.  Thornton v.
8  City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

9      If the action in question does not involve a suspect classification, a plaintiff may
10  establish an equal protection claim by showing that similarly situated individuals were
11  intentionally treated differently without a rational relationship to a legitimate state purpose.
12  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v.
13  Rodriguez, 411 U.S. 1 (1972); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662,
14  679 (9th Cir. 2002).  To state an equal protection claim under this theory, a plaintiff must
15  allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was
16  intentionally treated differently from others similarly situated; and (3) there is no rational
17  basis for the difference in treatment.  Village of Willowbrook, 528 U.S. at 564.

18                    7.    Fourteenth Amendment - Due Process Clause
19                        a.    Liberty Interest

20      The Due Process Clause of the Fourteenth Amendment protects prisoners from
21  being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell,
22  418 U.S. 539, 556 (1974). Liberty interests may arise from the Due Process Clause itself
23  or from state law.  Hewitt v. Helms, 459 U.S. 460, 466–68 (1983). Liberty interests created
24  by state law are generally limited to freedom from restraint which "imposes atypical and
25  significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin
26  v. Conner, 515 U.S. 472, 484 (1995).

27      Determining whether a prison condition is "atypical and significant" requires
28  consideration of the specific facts of each case.  Keenan v. Hall, 83 F.3d 1083, 1089 (9th

1  Cir. 1996).  The Court considers three guideposts in framing the inquiry: (1) whether the
2  challenged condition mirrored those conditions imposed upon inmates in administrative
3  segregation and protective custody, and thus comported with the prison's discretionary
4  authority; (2) the duration of the condition and the degree of restraint imposed; and (3)
5  whether the state's action will invariably affect the duration of the prisoner's sentence.
6  Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003).

7                           b.      Property Interest

8          The Due Process Clause protects prisoners from being deprived of property without
9  due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a
10  protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir.
11  1974).

12         An authorized, intentional deprivation of property is actionable under the Due
13  Process Clause.  Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v.
14  Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir.
15  1985).[1]  Authorized deprivations of property are permissible if carried out pursuant to a
16  regulation that is reasonably related to a legitimate penological interest. Turner v. Safley,
17  482 U.S. 78, 89 (1987).

18         For an unauthorized deprivation of property, Plaintiff would have to allege that he
19  lacks a meaningful state tort remedy for any unauthorized property deprivation (i.e., a
20  deprivation not authorized by properly adopted regulations, procedures and policies).
21  Plaintiff should note that for unauthorized deprivations of property, he does have an
22  adequate post-deprivation remedy under California law and therefore, any attempt to pursue
23  a claim under federal law for unauthorized taking of his  property fails as a matter of law.
24  Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–
25  895).

26  _____

27         [1] An authorized deprivation is one carried out pursuant to established state procedures,
   regulations, or statutes.  Logan, 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985);
28  see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

                                            -12-

1

8.      Americans with Disabilities Act

2      Title II of the American with Disabilities Act ("ADA") and § 504 of the Rehabilitation

3  Act ("RA") "prohibit discrimination on the basis of disability."  Lovell v. Chandler, 303 F.3d

4  1039, 1052 (9th Cir. 2002).  The ADA applies to public entities and the RA applies to

5  federally-funded programs.  (Id.)  Title II provides that "no qualified individual with a disability

6  shall, by reason of such disability, be excluded from participation in or be denied the

7  benefits of the services, programs, or activities of a public entity, or be subject to

8  discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to inmates

9  within state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955

10  (1998); see also Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1021 (9th Cir. 2010).

11  To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual

12  with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some

13  public entity's services, programs, or activities; (3) he was either excluded from participation

14  in or denied the benefits of the public entity's services, programs, or activities, or was

15  otherwise discriminated against by the public entity; and (4) such exclusion, denial of

16  benefits, or discrimination was by reason of [his] disability.  Simmons, 609 F.3d at 1021;

17  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).  The Ninth Circuit has held

18  that Title II of the ADA permits prisoners to bring actions against state officials in their

19  official capacities, but not in their individual capacities.  See Miranda B. v. Kitzhaber, 328

20  F.3d 1181, 1187-88 (9th Cir. 2003) (holding that "Title II's statutory language does not

21  prohibit . . . injunctive action against state officials in their official capacities").

22

9.      Privileges and Immunities Clause

23      "[T]he Privileges and Immunities Clause 'reliev[es] state citizens of the disabilities of

24  alienage in other States ....'"  Ponderosa Dairy v. Lyons, 259 F.3d 1148, 1156 (9th Cir.

25  2001) (quoting Paul v. Virginia, 8 Wall. 168, 75 U.S. 168, 180 (1869)).  "Discrimination on

26  the basis of out-of-state residency is a necessary element for a claim under the Privileges

27  and Immunities Clause."  Giannini v. Real, 911 F.2d 354, 357 (9th Cir. 1990).

28      **G.     Injunctive Relief**

1    Plaintiff seeks injunctive relief and asks the Court to stop Defendants' actions.

2    Injunctive relief is an "extraordinary remedy, never awarded as of right."  Winter v.
3    Natural Res. Defense Council, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary
4    injunction must establish that he is likely to succeed on the merits, that he is likely to suffer
5    irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
6    favor, and that an injunction is in the public interest."  Id. (citing Munaf v. Geren, 553 U.S.
7    674, 689–90 (2008)).

8    In cases brought by prisoners involving conditions of confinement, the Prison
9    Litigation Reform Act (PLRA) requires that any preliminary injunction "be narrowly drawn,
10   extend no further than necessary to correct the harm the court finds requires preliminary
11   relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a).

12   Plaintiff has not demonstrated that he will succeed on the merits of his case.  His
13   Complaint fails to state any cognizable claim.

14   Nothing in the Complaint suggests real and immediate threat of injury.  See City of
15   Los Angeles v. Lyons, 461 U.S. 95, 101–102 (1983) (plaintiff must show "real and
16   immediate" threat of injury, and "past exposure to illegal conduct does not in itself show a
17   present case or controversy regarding injunctive relief . . . if unaccompanied by any
18   continuing, present, adverse effects.").  Here Plaintiff's concerns for his safety are vague
19   and unclear.

20   Plaintiff does not address the third or fourth elements, i.e., the balancing of equities
21   and public interest concerns.  First, absent a showing sufficient to find harm to Plaintiff,
22   there is nothing to tip the balance of equities in Plaintiff's favor.  Second, while the public
23   has an interest in providing the best practical prisoner care, the record before the Court
24   does not justify the Court substituting its judgment in these matters for that of the prison
25   medical staff.

26   The various criteria not having been met, Plaintiff is not entitled to injunctive relief.
27   The Court will allow leave to amend.  If Plaintiff chooses to amend, he must set forth
28   sufficient facts showing the above noted elements.

-14-

1  **IV.    CONCLUSION AND ORDER**

2       Plaintiff's Complaint fails to state a claim upon which relief may be granted under §

3  1983.  The Court will provide Plaintiff with the opportunity to amend to cure the deficiencies

4  in his claim.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d

5  1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding

6  new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th

7  Cir. 2007) (no "buckshot" complaints).

8       Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state

9  what each named defendant did that led to the deprivation of Plaintiff's constitutional rights,

10  Iqbal, 556 U.S. at 677.  Although accepted as true, the "[f]actual allegations must be

11  [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly, 550 U.S. at

12  555 (citations omitted).

13       Finally, an amended complaint supercedes the prior complaint, Forsyth v.

14  Humana,SFO Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

15  (9th Cir. 1987), and it must be "complete in itself without reference to the prior or

16  superceded pleading," Local Rule 220.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Accordingly, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a complaint form;

2.   Plaintiff's Complaint, filed November 19, 2012, is dismissed for failure to state a claim upon which relief may be granted under § 1983;

3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4.   If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   December 21, 2012          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE

-16-